## 𝔯𝔦𝔠𝔥𝔪𝔬𝔫𝔡

## STRALEY V. ESSER AND OTHERS.

### January 12, 1915.

1. TRUSTS AND TRUSTEES—*Resulting Trust—Land Paid for by One, Conveyance to Another.*—Where land is purchased and paid for by one person and the conveyance is taken to another, the law implies a trust for the benefit of the former, immediately upon the payment of the purchase money; and such purchase and payment may be proved by parol evidence, but the evidence should be clear and satisfactory if the trust does not arise on the face of the deed itself.

2. RESULTING TRUST—*Payment of Purchase Money—Conveyance to Another—Code, Section 2463.*—The provisions of section 2463 of the Code, requiring all contracts for the conveyance or sale of real estate to be in writing have no application to resulting trusts arising from the payment of the purchase money by one party while the conveyance is to another.

3. JUDGMENTS—*Lien—Beneficial Interest of Debtor—Resulting Trust.*—Where the purchase price of land is paid by one person while the legal title is conveyed to another, the latter has no beneficial interest in the land, and it is not bound by a judgment against him, as only the debtor's beneficial interest in land can be subjected by his creditors. He is a mere trustee, and has no beneficial interest.

Appeal from a decree of the Circuit Court of Tazewell county. Decree for petitioner who intervened in suit. Complainant appeals.

*Affirmed.*

The opinion states the case.

*J. Irby Hurt, Greever & Gillespie* and *S. W. Williams,* for the appellant.

*Henry & Graham & Hawthorne* and *Marshall McCormick,* for the appellees.

KEITH, P., delivered the opinion of the court.

Straley filed a bill in chancery in which he avers that he recovered a judgment in the Circuit Court of Tazewell county, Virginia, against G. H. Esser, John A. Esser and C. C. Hyatt for the sum of ten thousand and odd dollars, with legal interest from the first day of October, 1910; that Jno. A. Esser is the owner of a 45/168 interest in a boundary of land in Tazewell county containing 1,656.14 acres, conveyed to him by J. M. Goodlow and others by deed dated August 22, 1907, and recorded in the clerk's office of Tazewell county; that he is also the owner of a 36/168 interest in the said boundary of land, conveyed to him by W. C. McCorkle and wife by deed dated August 27, 1907, and recorded in the clerk's office of Tazewell county; that Esser is also the owner of 24/168 interest in said land, conveyed to him by Patton J. Brown by deed dated August 27, 1907, and recorded in the clerk's office of said county; that these lands of Esser are unproductive and are valuable only on account of the coal and minerals underlying them and that they will not yield by renting for a period of five years a sum sufficient to discharge complainant's judgment.

At a subsequent day R. S. Graham, trustee in bankruptcy of the Empire Coal Land Corporation, filed his petition in the suit of *Straley* v. *Esser* and others, in which he alleges that he is the duly appointed trustee of the estate of the said bankrupt corporation and has given bond with surety for the performance of his duties. The petition then goes on to state that the tract of 1,656.14 acres referred to in Straley's bill was originally owned as follows: 63/168 interest, part thereof, by the Empire Coal

Land Corporation; 36/168 interest by M. C. McCorkle; 45/168 interest by J. M. Goodlow, and 24/168 interest by Patton J. Brown; that by the deeds mentioned in Straley's bill McCorkle, Goodlow and Brown conveyed their respective interests to Esser; and that at the time of the dates of said deeds, respectively, and of the conveyances therein made, the said John A. Esser was the president of the Empire Coal Land Corporation, and that in the purchase of the lands and the taking of the deeds he was acting for the Empire Coal Land Corporation, of which he was president; that all of the lands, as far as they are paid for, were paid for with the money of the Empire Coal Land Corporation; and that the several interests in said tract of land, the naked legal title to which appears by the record to be in John A. Esser, were not only paid for out of the moneys of the said corporation, but were purchased for said corporation, and the equitable title to all of said lands was in said corporation and the lands themselves, subject to any liens for unpaid purchase money, belonged to said company. The petitioner then goes on to say that Esser, in taking a conveyance of the lands directly to himself took them for the use and benefit of the Empire Coal Land Corporation; that Esser has no interest in the lands, never did have any interest therein, and, therefore, the judgment set up in complainant's bill is not a lien upon said lands.

Straley answered this petition, and it is sufficient to say that he denied that the Empire Coal Land Corporation now has, or ever at any time had, any interest in the lands as set forth in the petition, but on the contrary Esser paid therefor and was the owner thereof, and that they are subject to the lien of complainant's judgment asserted in the bill above referred to. The answer further denies that the moneys with which the lands were purchased were the funds of the Empire Coal Land Corporation, or any other

18

person or corporation, but that the properties were paid for with funds belonging to John A. Esser. Accordingly, respondent denies that either the equitable title or any other interest in said property was ever vested in the said corporation.

McCorkle filed his bill against John A. Esser and others to enforce a vendor's lien for so much of the purchase money as was unpaid, and a like bill was filed by the Goodlow Brothers for the same purpose.

The case of *McCorkle* v. *Esser* was referred to a commissioner, who reported that from the evidence taken before him it appears "that John A. Esser has now no interest in the land in the bill mentioned and has never had any interest therein, is not now entitled to and has never been entitled to such interest; that he is a mere trustee for the benefit of Empire Coal Land Corporation, and as such trustee is holding the legal title to said interest in said land. * * * "

While the other cases were not referred to a commissioner, evidence of like character was introduced in them, and upon the record thus made the circuit court was of opinion that the undivided interests which had been conveyed to Esser had been paid for out of funds belonging to the Empire Coal Land Corporation, and that a trust resulted to that corporation as to which John A. Esser never had any beneficial interest which could be subjected to the satisfaction of the judgment against him.

In *Dyer* v. *Dyer*, 2 Cox 92, it was held, that "The clear result of all the cases, without a single exception, is, that the trust of a legal estate, whether taken in the names of the purchaser and others jointly, or in the names of others without that of the purchaser, whether in one name or several, whether jointly or successively, results to the man who advances the purchase money."

A like doctrine prevails in this State.

In *Bank of U. S.* v. *Carrington,* 7 Leigh (34 Va.) 566, it is said to be "a well established principle in England, that if one man purchase an estate in lands, and do not take the conveyance in his own name, but in that of another, the trust of the legal estate results to him who pays the purchase money. This trust results by the mere operation of law, though the person in whose name the conveyance is taken executes no declaration of trust. * * * The proofs, however, ought to be very clear, if the trust does not arise on the face of the deed itself. And the resulting trust may be proved by parol evidence, after the death of the person in whose name the conveyance is taken." *Lench* v. *Lench,* 10 Ves. 511.

This doctrine prevails in Virginia, and in the case just cited it was held, that where land is purchased and paid for by one person, and the conveyance is taken to another, the law will imply a trust for the benefit of the former; and such purchase and payment may be proved by parol evidence.

In *Cox* v. *Cox,* 95 Va. 173, 27 S. E. 834, it is said, that "Whenever an estate is purchased in the name of one person, and the consideration is paid by another, a trust is created by operation of law in favor of the party paying the purchase money; and, when the relation of trustee and *cestui que trust* is once established, no subsequent dealing with the trust property by the trustee can alter the relation of the parties, or relieve the property of its trust character." *Francis* v. *Cline,* 96 Va. 201, 31 S. E. 10.

The proof in this case is of the most convincing character, and without a particular discussion of it we shall content ourselves with saying that it fully sustains the conclusion of the commissioner, which was sanctioned by the court, and meets the strict requirements prescribed by the adjudicated cases and the text-writers.

It is contended, however, by the appellant, admitting for the sake of the argument that the Empire Coal Land Corporation paid for the property in dispute, and that probably under the rule of the common law and previous statutes and rules of decision it is entitled to it, that the rights of appellant, who was and is a creditor of John A. Esser, are in no wise affected, because of section 2463 of the Code of Virginia, which says that "Every contract, not in writing, made, in respect to real estate or goods and chattels, in consideration of marriage, or made for the conveyance or sale of real estate, or a term therein of more than five years, shall be void, both at law and in equity, as to purchasers for valuable consideration without notice and creditors."

We cannot agree that this section applies to and controls the case under consideration.

As was said by Judge Burks, one of the revisors of the Code, referring to this statute, "Its purpose was to change the law as declared in *Floyd* v. *Harding,* 28 Gratt. 401, and subsequent Virginia cases recognizing and following the doctrine of that case." See note to *Braxton* v. *Bell,* 1 Va. L. Reg. 682.

In *Floyd* v. *Harding,* 28 Gratt. 401, this court held that the registry acts do not apply to a verbal contract for land, and that the purchaser having paid all the purchase money, and having been put into possession, so that he had a valid equitable title to the land, it is not subject to the lien of a judgment against the vendor. In the opinion delivered by Judge Staples it is said: "In the outset it may be well to advert briefly to the case of *Withers* v. *Carter,* 4 Gratt. 407, 50 Am. Dec. 78. No sound conclusion can be arrived at in this case without a proper understanding of the facts and principles of law involved in that case. There the parties had reduced their contract to *writing,* and the purchaser was put in possession of the property. Sub-

sequently a deed was executed by the grantor; but it was never recorded, having been lost by the person to whom it was committed to be delivered to the clerk. At that time the statute required the recordation of deeds, but not of written executory contracts for the sale of land. The court of appeals held that while the effect of the statute was to render the unrecorded deed *quoad* the creditors of the grantor, a mere nullity, it left the subject precisely in the same situation as if no deed had been made or attempted. Judge Baldwin, in delivering the opinion of the court said, 'It could not be doubted, a fair purchaser of the equitable estate has a right to hold it against creditors of the vendor who have not previously recovered judgments.' "

The effect of the decision in *Withers* v. *Carter*, therefore, was that while the deed, not having been recorded, was void, there was behind the deed a complete equitable title by virtue of a written contract, which the statute as of that date did not require to be recorded, and that therefore the purchaser took the land discharged of the judgment.

This case led to a change of the law at the revisal of 1849, and it was provided that "Any contract in writing made in respect to real estate, or goods and chattels, in consideration of marriage, or made for the conveyance or sale of real estate, or a term therein of more than five years, shall from the time it is duly admitted to record, be as against creditors and purchasers as valid as if the contract was a deed conveying the estate or interest embraced in the contract." And section 5 provided, that "Every such contract, every deed conveying any such estate or term, and every deed of gift, or deed of trust or mortgage, conveying real estate or goods and chattels, shall be void as to creditors and subsequent purchasers for valuable consideration without notice, until and except from the time it is duly admitted

to record in the county or corporation wherein the property embraced in such contract or deed may be."

Discussing the statute as amended by the revisors of 1849, Judge Staples proceeds: "These provisions, as will be seen, do not expressly, or even by any fair implication, include all contracts for the sale of land. They apply only to contracts in writing. Having provided for the recordation of written contracts in the fourth section, the framers of the statute by the use of the words, 'such contracts' in the fifth, evinced a deliberate purpose to confine the operation of that section to contracts in writing. It is obvious that the language was carefully chosen, and the omission to require the recordation of *every* contract was not accidental. In order to give the statute the construction now contended for, we must strike out, or wholly disregard the words 'in writing,' in the one section, or the word 'such' in the other." And the court held in the case of *Floyd* v. *Harding*, that the verbal contract for the sale of the land having been fully executed by the payment of the purchase money, and the purchaser being placed in possession, he had a valid equitable title to the land which was not subject to the judgments against the vendor. This condition of the law which placed a verbal contract incapable of recordation upon a higher footing than an unrecorded deed or contract in writing for the sale of land led to the enactment of the law as it is now found in section 2463 of the Code. By the terms of the law every contract, not in writing, made in respect to real estate or goods and chattels, in consideration of marriage, or made for the conveyance or sale of real estate, is void both at law and in equity as to purchasers for valuable consideration without notice and as to creditors, whether with or without notice.

Judge Burks, in the note referred to, speaking of section 2463, says that this section is new and one of the most important sections of the Code, and referring to it in volume

4 of the reports of the Virginia State Bar Association for 1891, he says: "The course of decision in Virginia led to this remarkable result: that on an oral contract for the sale of land under which the purchaser took possession and paid all the purchase money before a creditor of the vendor obtained judgment, the purchaser acquired a good title in equity as against such creditor, while under a written contract and a deed of conveyance, neither of which was recorded, the creditor's right was paramount to that of the purchaser. The purchaser by parol got a good title in spite of the statute of frauds and perjuries, and his title was not affected by the registry law, because he could not have that recorded which was not written, while the purchaser by writing, who complied with the statute of frauds, lost his rights as against the creditor, by failing to comply with the registry law when it was in his power to do so. It seemed to the revisors that this singular result required some change in the law; and it was accordingly made by declaring all contracts, not in writing, for the sale of real estate, void both at law and in equity, as to creditors and subsequent purchasers for valuable consideration without notice."

On two occasions, therefore, this learned judge referred to the section, and in neither instance does he undertake to extend its operation so as to affect the doctrine of resulting trusts as theretofore established in Virginia. The deeds in this case, by which the legal title to the lands was vested in Esser, were duly recorded, but equity looking back of the form of things to the real substance finds that the beneficial interest under those deeds was not in Esser, who held the mere legal title, but in the corporation whose money paid the consideration.

In all the cases bearing upon the question which we have considered and in numerous others which we deem it unnecessary to mention, the beneficial interest had been in

the vendor of the land. In *Withers* v. *Carter* the vendor had the legal title and the equitable title up to the time that he entered into an unrecorded written contract for its sale. In *Floyd* v. *Harding*, the vendor of the land was its complete owner in law and in equity up to the time that he parted with his interest by the oral contract incapable of recordation. But in the case before us, Esser never at any time was the beneficial owner of any interest whatever in the real estate which is now sought to be subjected to the lien of his judgment. For mere convenience the legal title was vested in him, but the beneficial ownership was never at any time in him, but was always from the moment the purchase money was paid in the Empire Coal Land Corporation.

In Minor on Real Property, section 693, it is said that the lien of the judgment attaches only "to such beneficial interest as the debtor has in the land at the date of the judgment or acquires afterwards, the presence or absence of the mere legal title being immaterial." And further on, in the same section, it is said: "Upon like general principles, if there be a resulting or constructive trust, though it be capable of establishment only by parol, judgment creditors of such trustee cannot subject the land, the rule being uniformly applied that only the debtor's beneficial interest in the land may be subjected by his creditors, and in such case the trustee has none, as of course, also, he would not have if the trust were express." See Barton's Chy. Pr., section 288.

In *Jesser* v. *Armentrout*, 100 Va. 666, 42 S. E. 681, Pomeroy's Equity Jurisprudence, section 1087, is quoted with approval as follows: "In pursuance of the ancient equitable principle that the beneficial estate follows the consideration, and attaches to the party from whom it comes, the doctrine is settled in England and a great majority of the American States that, where

property is purchased and conveyance of the legal title is taken in the name of one person, while the purchase price is paid by another person, a trust results at once in favor of the party who pays the price, and the holder of the legal title becomes a trustee for him."

At the instant the purchase price is paid the resulting trust springs into existence and the holder of the legal title becomes a mere trustee; from which it necessarily follows that a judgment against the trustee does not and cannot bind the beneficial interest.

We are therefore of opinion that there is no error in the decree, which is affirmed.

*Affirmed.*