GEORGE PAULSON *vs.* JOHN PAULSON.

MARCH 28, 1929.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

BARROWS, J. On December 17, 1923, Axelina C. Paulson bought with her own money a lot of land on Harding avenue, in Cranston, upon which two houses were to be erected. She took title in the name of her son John, a carpenter. She had another child, George. Both were slightly over twenty-one years old. She had been for some years in the business of building and buying houses, taking title in either son's name and at the same time a deed back which she kept off the record. In 1923 her health had begun to fail. John was assisting her but without pay other than spending money. She had made a certain bank account into a joint account with John payable to "either or the survivor" and at one time during building operations had nearly $9,000 in such account. George worked for others some of the time and helped his mother collect rents.

In February, 1924, John being engaged in litigation transferred title to George who on the same day gave a deed back to John. This deed was kept off the record until February, 1925, when the litigation terminated. Mrs. Paulson stated to various witnesses that in making the purchase she was starting John in business and was going to give or had given him the land to see what he could do. Erection of a house was commenced by John early in 1924 and all materials and labor were paid for from the joint account. John drew no pay other than a few dollars each week. A cellar was dug for the second house.

On August 2, 1925, Mrs. Paulson died, intestate. The first house substantially had been completed but was not sold because Mrs. Paulson thought it worth $500 more than did John. After her death the house was sold, the other house completed and the gross proceeds of both, amounting to $14,600 came into John's hands.

This bill in equity sought to have John's title declared to have been held in trust. In such event George inherited a one half equitable interest. The Superior Court denied

complainant's prayer and dismissed the bill. The trial justice, feeling much uncertainty, reopened the case and took further testimony. That for complainant was merely to the effect that in 1925 Mrs. Paulson intended her boys to share her property equally after she died, and that for respondent being to the effect that Mrs. Paulson prior to December 17, 1923, had stated her intention of giving John the Harding avenue land and starting him in business as a reward for fidelity and further statements early in 1924 to witnesses that she had given him this land for such reasons. These statements were admitted by virtue of Public Laws 1927, Chapter 1048. The new evidence strengthened respondent's case and again the court entered a decree dismissing. the bill because complainant had failed to establish his case. From this decree complainant is here on appeal.

Complainant asks us, in view of the conflict of testimony between John and George, to disregard all oral testimony as to statements by Mrs. Paulson and to draw our own inferences from the undisputed facts. Warrant for such argument exists because the trial court stated that the decision turned largely on inferences. So far as our decision rests upon inferences from undisputed facts we have reached our conclusions unaffected by those of the trial court. *Raferty* v. *Reilly*, 41 R. I. 47. We are, however, unable to disregard the oral testimony as to statements made by Mrs. Paulson to others than John and George.

Complainant properly urges that great caution should be exercised in weighing hearsay statements of Mrs. Paulson's intentions or what she had done. Repetition of what another has said is open to the danger of misunderstanding the exact language, misapprehending the idea intended by the speaker or misquoting the language used, to say nothing of intentional misrepresentation. In the present case one must carefully weigh the circumstances under which Mrs. Paulson told witnesses that John owned the land, as well as what she is claimed to have said, in order to determine whether she intended to convey the idea merely that title

had been placed in his name or whether she meant that she had given the property to him as his own. We have carefully studied the testimony with these considerations in mind and we think it preponderates in favor of an absolute gift.

The trial court dismissed complainant's bill largely on the theory that he had not sustained the burden of proof. Our review of the evidence convinces us that a decision for respondent need not be based solely upon the weakness of George's case. Complainant started with the presumption that a resulting trust arose when Mrs. Paulson paid the price and took title in John's name. *Cetenich* v. *Fuvich*, 41 R. I. 107. Such a trust was created to carry out the presumed intentions of the parties. The time when this intention was important was when the title was taken in John's name. Declarations of intention by Mrs. Paulson made subsequently were valuable only to throw light on what Mrs. Paulson and John intended to do on December 17, 1923. Declarations of Mrs. Paulson's future intentions after 1923 were generalizations and of no help in answering our present problem. Complainant correctly contends that what Mrs. Paulson intended to do in the future, as shown by statements why she did not make a will after 1923, could not alter this case. At the time of conveyance either there was an absolute gift to John or it was Mrs. Paulson's intention to take title in his name for convenience merely. The trial court did not so treat the case for it said that the question was, what did the testimony show as "Mrs. Paulson's intention at the time she died, what she meant to do with her property and whether she meant to have John have this piece of property to which he had title at the time she died." This misconception vitiated the value of that court's decision.

We have weighed the circumstances and oral testimony concerning Mrs. Paulson's statements of intention when the deed was made. While we may not rely upon the trial court's inferences, we can and must give heed to the fact

that the court saw and heard the witnesses who testified as to Mrs. Paulson's statements. The language attributed to Mrs. Paulson indicates her intention on December 17, 1923, to make an absolute gift. The court says John's testimony did not strongly impress him but that Mrs. Belford made a favorable impression. The court makes no comment upon Mrs. Merrill, Miss Harper or Mr. Casey. Our study of the testimony indicates nothing to discredit these witnesses or to lead us to believe that they misunderstood Mrs. Paulson. Mr. Hopkins, offered by complainant, testified to statements susceptible of interpretation as favorable to respondent as to complainant and we have only circumstances and George's own statement to indicate that his mother told him the property was not John's. The court expressed its sympathetic attitude toward George. In this situation we do not feel that we may disregard all of Mrs. Paulson's statements. That the trial court felt that some witnesses testifying to them were accurate and trustworthy calls for some weight in this court. *Nichols* v. *Hoxie*, 33 R. I. 77.

The appeal is denied; the decree appealed from is affirmed, and the cause is remanded to the Superior Court for further proceedings.

*Judah C. Semonoff, Edmund J. Kelly,* for complainant.

*Joseph W. Grimes, James O. McManus, William H. Mulligan,* for respondent.