**In the Matter of Patricia Ann SMITH, Bankrupt.**

**No. BK–1272–70–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Oct. 6, 1972.

L. Wayne Townsend, Richmond, Va., for Patricia Ann Smith.

Harry Shaia Jr., Trustee, Richmond, Va., for Trustee.

Allan S. Buffenstein, Richmond, Va., for Mr. Shaia.

Benton Pollok, Richmond, Va., for Mrs. Bemiss (Bankrupt's Mother).

## MEMORANDUM

MERHIGE, District Judge.

Elizabeth E. Bemiss petitions for a review of an order of the Honorable Henry D. Evans, Referee in Bankruptcy, entered on March 14, 1972. This Court's jurisdiction is obtained pursuant to 11 U.S.C. § 67(c).

The sole issue before the Court is whether Mrs. Bemiss, mother of the bankrupt Patricia Ann Smith, is entitled as against the trustee to the property in which she now resides. The Court finds the following pertinent facts from the record:

On May 5, 1965, a lot and house at 2519 Irisdale Avenue, Henrico County, Virginia, was conveyed to the bankrupt, Patricia Ann Smith. Mrs. Bemiss made the down payment on the property and has continued to pay all of the insurance, taxes and mortgage payments. Mrs. Bemiss and her husband have resided at the property from the date of the conveyance; at no time has the bankrupt lived there.

Mrs. Bemiss explained in her testimony that the fee title was placed in the bankrupt's name solely because Mrs. Bemiss felt that she could not have qualified for a home loan because of her age and financial situation. Accordingly, Mrs. Bemiss argues that her daughter held title to the property impressed with a resulting trust in favor of Mrs. Bemiss.

For the most part, the record indicates that the bankrupt exercised no incidents of ownership over the property inconsistent with the alleged trust. A major exception, however, is that the bankrupt listed the property as an asset on two occasions when she applied for credit, without making mention of the alleged trust. The property was not subjected to a second mortgage on either of these occasions.

From the evidence before him, the Referee concluded that the parties did not intend to create a resulting trust on the property at the time of its initial conveyance to the bankrupt. He further concluded that even if such a trust did in fact exist, that under §§ 70(a)(5) and 70(c) of the Bankruptcy Act, 11 U.S.C. § 110, title would nonetheless vest in the bankruptcy trustee.

Considering first the alternative basis for the Referee's decision, i. e., that a resulting trust in fact does exist, but that Title 11 U.S.C. § 110 dictates that title vest in the trustee, the Court concludes as follows:

Section 70(a)(5), 11 U.S.C. § 110(a) of the Bankruptcy Act provides that the trustee

. . . shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title . . . to all of the following kinds of property wherever located: . . . property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him . . .

A transfer is defined in § 1(30) of the Act, 11 U.S.C. § 1, to include "fixing a lien upon property." Combining this definition with the fact that the bankrupt placed a mortgage on the property at the time of its conveyance to her, the Referee concluded that the property in question was an asset of the bankrupt's estate.

■ The Court reaches a different conclusion. The only estate to which Mrs. Bemiss' equitable interest attaches is the equity in the property. It is this which the trustee seeks to recover, not the property per se. Assuming, as we have, that a trust exists, then the equity was not the bankrupt's to transfer. Had the bankrupt sought to secure a second mortgage, this time on the equity remaining on the property, Mrs. Bemiss could have prevented the transfer by notifying the transferee of her interest. Accordingly, the property interest sought by the trustee is not a transferable one within the meaning of § 70(a)(5).

■ The Referee also felt that the trustee could recover the property by virtue of § 70(c). Section 70(c) of the Bankruptcy Act, 11 U.S.C. § 110(c)(3), the so-called "strong arm" clause, provides the following:

The trustee shall have as of the date of bankruptcy the rights and powers of: . . . (3) a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt

upon a simple contract could have obtained such a lien, whether or not such a creditor exists.

This provision makes clear that the trustee in bankruptcy occupies the position of a lien creditor. United States v. Eiland, 223 F.2d 118, 123 (4th Cir. 1955); B–W Acceptance Corp. v. Benjamin T. Crump Corp., 199 Va. 312, 99 S.E.2d 606 (1957). He does not, however, occupy the stronger position of a lienor for value. Myers v. Matley, 318 U.S. 622, 63 S.Ct. 780, 87 L.Ed. 1043 (1943); 4A Collier on Bankruptcy, ¶ 70.52(1) (1971). The issue to be decided is whether such a creditor can defeat a resulting trust under Virginia law.

The Virginia recording statute, Va. Code Ann. § 55–96 (1969), provides the following:

Every such contract in writing, and every deed conveying any such estate or term . . . shall be void as to all . . . lien creditors, until and except from the time it is duly admitted to record . . .

■ From a reading of Va. Code Ann. § 55–95, it is clear that the sort of contracts referred to in this provision are those mentioned in Va. Code Ann. § 11–1 (1964). Section 11–1 concerns contracts "made in respect to real estate" and provides that all such contracts that are not in writing shall be void as to purchasers for value and creditors. Considering these provisions together with § 70(c), it is clear that the trustee in bankruptcy, as a lien creditor, takes the bankrupt's real estate free from most hidden interests. It remains to be determined whether a resulting trust falls within this category of interests which the trustee can defeat.

The basic question that is before the Court is whether the resulting trust that arose in this case is the sort of contract made in respect to real estate which must be in writing and recorded before it can defeat a lien creditor. If it is not, then the two provisions noted above do not apply and nonstatutory law governs.

The Virginia Supreme Court considered this identical issue in Straley v. Esser, 117 Va. 135, 83 S.E. 1075 (1915). In considering the effect of the statutory predecessor of § 11–1, the Court concluded that the provision did not affect the doctrine of resulting trusts as theretofore established in Virginia. Reaffirming this conclusion, the Court later stated that the section "has no application to resulting trusts." It then went on to apply the applicable nonstatutory law, stating "that, where one holds the legal title to real estate which is impressed in his hands with a resulting trust, such trust may be enforced and is good against his judgment creditors." Savings & Loan Corp. v. Bear, 155 Va. 312, 154 S.E. 587, 594 (1930). Although the *Bear* case is the last decision to speak to the issue, the Court has no basis for assuming that the law in Virginia has changed.

■ Accordingly, the Court finds that the trustee in bankruptcy cannot defeat the equitable claim of Mrs. Bemiss, if in fact it exists, on the basis of § 70(c). It remains to be determined whether a resulting trust does exist.

The concept of the resulting trust stems from what courts consider to be the normal human desire to obtain something in return for value paid out. The doctrine states that "normally the payor of the purchase price of property is entitled to be decreed to be beneficiary of a trust, if the conveyance is absolute and runs to another with the consent of the payor." B. Bogert, The Law of Trusts and Trustees, § 454 (2d ed. 1964). Thus, if A purchased land from X and caused the deed to run to B, when A owed no debt to B, the law would ordinarily view B as a trustee for A. The basis for this conclusion is the inference that A *intended* B to be his trustee.

■■ Probably the most important factor for determining whether the parties intended a trust to be created is the presumption of fact which the law applies.

If A and B in the example given are not related by blood or law, there is a rebuttable inference that a trust was intended. If, however, they are related in certain ways, such as husband and wife, there is a similar inference that a gift was intended. In either event, the actual burden of proof rests on the party asserting the trust.

■■ The case before the Court involves a mother who paid the purchase price for real property, the deed of which ran to her daughter, the bankrupt. Although some state decisions hold that this sort of relationship does not alter the basic trust inference, e. g., Paulson v. Paulson, 50 R.I. 86, 145 A. 312 (1929), the Referee correctly found that under Virginia law the mother-daughter relationship implies a gift. Young v. Holland, 117 Va. 433, 84 S.E. 637 (1915).

Upon an examination of the Referee's memorandum, however, the Court finds that he did not take into consideration another factor in regard to what inference should be accorded the transaction. This factor concerns the relative age, health, financial status, etc., of the mother and daughter. If the mother is elderly, with few funds, while the daughter is an adult and amply able to care for herself, the gift inference is considerably weakened and may, indeed, no longer be applied. *Bogert, supra,* at § 460; e. g., Long v. Huseman, 186 Md. 495, 47 A.2d 75 (1946). In such a case, the other evidence supporting a trust, such as payments or use of the property, would be more likely to result in a finding that a trust was intended.

The Court cannot determine from the record what the relative age and wealth differentials between Mrs. Bemiss and the bankrupt were at the time of the conveyance. The implication, however, is that Mrs. Bemiss was of few means and elderly. Moreover, it appears to the Court that the question of whether there was a resulting trust on the facts stated, either as to a life estate or as to the fee,

is a close one. The Referee's conclusion might well be different if the gift inference is indeed weakened as it should be if the facts so require. Accordingly, the Court will remand the petition to the Referee in order that he may hear additional evidence, if necessary, and reconsider the evidence in light of a lessened inference.

In examining the Referee's report, the Court takes note of two other factors that should be reconsidered on remand. First, the Referee notes correctly on page five that a trust should not be recognized where its purpose is to defraud creditors. There is no evidence in this case, so far as can be discerned from the instant record, however, that Mrs. Bemiss intended to defraud anyone. It is true that her reason for placing the deed in her daughter's name was because she feared she could not get a home loan. But no fraud was worked upon the bank. It could only rely for the payments upon the party to whom the loan was extended and on whose credit it was based.[1] It was immaterial to the bank who actually lived in the house or who made the payments.

The Referee also makes mention, on page six of his findings, of the possibility of an estoppel by reason of the bankrupt's listing of the property as her asset in applying for credit. The Court does not understand, however, how Mrs. Bemiss could be so affected. The record does not indicate that she acquiesced in such use, much less that she even knew of it. The facts would have to be considerably stronger than appear at present before an estoppel could be raised.

An order in accordance with this memorandum will issue.

1. Although the fact that the bankrupt was personally liable on the deed of trust is evidence tending to rebut the trust, the Court considers it by no means to be dispositive. The important issue is whether the bankrupt and Mrs. Bemiss understood, among themselves, that the latter would make the necessary payments. *See, e. g.,* Davis v. Roberts, 365 Mo. 1195, 295 S.W.2d 152 (1956).