AMERICAN SURETY CO. OF NEW YORK v. CARBON TIMBER CO. et al.
CARBON TIMBER CO. et al. v. AMERICAN SURETY CO. OF NEW YORK.

(Circuit Court of Appeals, Eighth Circuit. December 8, 1919.)

Nos. 5277, 5294.

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS ⬥⬥8—TRUST DEED CONSTRUED AS ASSIGNMENT.

A trust deed, by which an insolvent corporation transferred all its property, except that mortgaged to secure bonds to trustees, to be sold and the proceeds to be applied on its debts, with preferences to certain creditors, and others to be paid pro rata, *held* in effect a voluntary assignment for creditors.

2. SUBROGATION ⬥⬥7(2)—SURETY PAYING BOND TO UNITED STATES SUBROGATED TO ITS RIGHT TO PRIORITY OF CLAIM.

Under a general assignment by an insolvent corporation to trustees for benefit of creditors, the property passes subject to the right of the surety

⬥⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

on a bond given by the corporation to the United States, which has paid the debt, to priority of payment by subrogation to the right of the United States by virtue of Rev. St. §§ 3466–3468 (Comp. St. §§ 6372–6374).

3. STATES ☞4—SUBROGATION OF SURETY TO RIGHT OF PRIORITY OF UNITED STATES GOVERNED BY FEDERAL LAW.

The provisions of Rev. St. § 3468 (Comp. St. § 6374), giving a surety which has paid the debt of its principal to the United States by subrogation priority in distribution of the assets of such principal in insolvency, supersede the state laws governing such distribution.

4. PRINCIPAL AND SURETY ☞190(8)—SURETY HAS RIGHT TO INTEREST ON AMOUNT PAID ON BOND.

The surety on a bond given to the United States by a contractor, who has paid the debt of his principal to the government, the amount of which was definitely determinable under the contract, has a liquidated claim against his principal for the amount paid, with interest from date of payment.

5. ASSIGNMENTS FOR BENEFIT OF CREDITORS ☞317—CLAIMANTS ENTITLED TO INTEREST ON PREFERENTIAL CLAIM.

A preferential claim against the estate of an insolvent is entitled to interest, where interest would otherwise be recoverable, and there are sufficient funds to pay claims of its class in full.

Appeal from the District Court of the United States for the District of Wyoming; John A. Riner, Judge.

Suit in equity by the American Surety Company of New York against the Carbon Timber Company and others. From the decree, all parties appeal. Modified and affirmed.

W. E. Clark, of Denver, Colo., for plaintiff.

William E. Mullen, of Cheyenne, for defendants.

Before CARLAND and STONE, Circuit Judges, and ELLIOTT, District Judge.

ELLIOTT, District Judge. This is an action brought by the American Surety Company of New York, a corporation, appellant in No. 5277, and appellee in No. 5294, hereinafter referred to as the plaintiff, against the Carbon Timber Company and others, appellee in the first number above referred to and appellants in the latter, hereinafter referred to as defendants. The purpose of the action is to recover the amounts paid by the plaintiff upon settlements of the liability incurred upon its undertaking in behalf of the Carbon Timber Company, upon the latter entering into a contract or contracts with the government of the United States with reference to the cutting of timber. The Timber Company failed to perform its duties in accordance with the provisions of its contract with the United States, and there became a liability on the part of the Timber Company to the government on account thereof, and therefore a liability on the part of the Surety Company. The Surety Company made settlements, there being more than one default, in accordance and in compliance with the provisions of the contract between the Surety Company and the Timber Company. By the terms of the contract the Surety Company became the attorney in fact for the Timber Company and was authorized to make the settlements and payments.

In addition to alleging the facts showing the execution of the bond, the default of the Timber Company, its liability under the provisions of its contract with the United States, the liability of the Surety Company, its right to make the settlement, and its duty to make the payments therein named, and the fact that they were made, with the dates thereof, etc., it is also alleged that the Surety Company was entitled to a preference in the payment of its claim against the Timber Company under the statutes of the United States, and it is further alleged that the Timber Company was insolvent, and, being so, executed and delivered to defendants Meyer and Olson, two of the then officers of the said company, a deed of general assignment of all of the property of the company for the benefit of certain creditors, which was in the form designated a "deed of trust"; that they converted the property of said company into money, and out of the proceeds of the sales paid themselves compensation for services and other amounts to other persons, etc., in the sum of more than $15,000; and that they still have in their possession money aggregating approximately $30,000, as part of the proceeds of said sales.

The Surety Company prays relief in the sums of money so paid by it, together with interest at the rate of 8 per cent. per annum from the dates of payment thereof, and that the same be decreed a preferred claim and entitled to preference in payment from the moneys in the hands of said defendants Meyer and Olson, and that injunction issue, enjoining and restraining said defendants from paying out or in any manner disposing of the money in their hands and under their control until the further order of the court.

Issue was joined by separate answer on the part of the defendant company and the defendants Meyer and Olson, in which the facts were practically admitted as alleged in the pleading; the form of the trust deed being by amendment pleaded by the plaintiff and the effect of the instrument denied by the respective answers.

The case was tried upon the merits, and the facts were found by the court, and judgment entered thereon in favor of the plaintiff and against the defendants in the sum of $4,880.45, which was admittedly the sum paid by plaintiff to the United States upon its undertaking in behalf of the Timber Company, to which entry of judgment the defendants duly excepted. It was further decreed that the plaintiff have and recover no interest prior to the date of the judgment, and to the disallowance of interest plaintiff duly excepted. The respective parties prosecute their appeal and cross-appeal upon such exceptions.

[1] The defendants prosecute the cross-appeal with various assignments of error alleged to be so closely related that they are discussed by counsel together. It is especially urged that the trust deed executed by the Timber Company to defendants Meyer and Olson is not a deed of general assignment within the contemplation of sections 3466 to 3468, inclusive, of the Revised Statutes of the United States (Comp. St. §§ 6372-6374), which provide a priority of payment of debts due the United States, asserting that the instrument itself does not purport to be a deed of general assignment, etc.

An examination of the instrument in question discloses that the expressed purpose and intent thereof was:

"To secure and to pay as promptly as possible all labor claims and also reimburse the Elk Mountain Mercantile Company for moneys expended in producing ties and especially for moneys paid all labor in producing ties and other labor, and it is also desired to fully secure as much as possible any deficiency that may be owing to the Carbon State Bank over and above the amounts that may be paid to it by reason of said tie contract."

At another place it appears that it was the desire of the Carbon Timber Company that—

"Any and all creditors who are not secured by or under the provisions of the supplemental deed of trust  *  *  *  should be secured, and have assurances that they will be paid to the extent of the property of the said Carbon Timber Company."

Such examination further discloses that the instrument itself recites the intent and purpose to transfer all of the property of the Timber Company, as follows:

"Covering all of the property of the company not included by the supplemental deed of trust, and especially such property as is specifically exempt from its provisions," etc.

The said trust deed further provided the specific procedure for the distribution of the proceeds of the sale of the property therein transferred, in language as follows:

"And that the proceeds thereof shall be applied, first, towards the payment of the labor claimed indebtedness of the company, and then to the Elk Mountain Mercantile Company, and the Carbon State Bank, and any other unsecured creditor, by said trustees, pro rata, whenever they have any moneys on hand."

The instrument, in addition to the property described therein, further evidences an intent to convey all of the property of the Timber Company in the following language, immediately following the description of certain property:

"And also any and all property of whatsoever kind or description now owned by the Carbon Timber Company, or in which the Carbon Timber Company has an interest, that is not covered by the supplemental deed of trust made and executed by this company to the Wyoming Trust & Savings Bank, and bearing date of the 24th day of April, 1915."

In said deed specific authority is conferred upon the trustees to—

"whenever they deem it for the best advantage of all parties concerned, sell portions or all of said property for the payment of said indebtedness, the proceeds of any and all such sales to be applied, first, to their own costs and expense in conducting said sale, and thereafter to the Carbon State Bank for moneys advanced for labor claims, and the Elk Mountain Mercantile Company for moneys owing on account of payments made to laborers," etc.

The foregoing quotations are sufficient to show the understanding of the defendant Carbon Timber Company, when it executed the same, as to who was intended to be benefited by such deed of trust. It may be added here that the Carbon State Bank and the Elk Mountain Mer-

cantile Company, named in said deed of trust, were subsidiaries of the defendant Carbon Timber Company.

The facts are practically all admitted. There is so little controversy upon any material fact that it is not worthy of discussion here. The Carbon Timber Company was insolvent when this conveyance was made; it transferred its property to the defendants Meyer and Olson as trustees for the benefit of its creditors; all of the property then owned by it, except certain property that was contained in the deed of trust to secure payment of its bonds then outstanding, was transferred. It follows that such conveyance and transfer was not intended as a deed but was intended as security for its debts and a transfer of its property for the benefit of its creditors. Upon its face it constitutes a preference as to certain of its creditors therein named, and these creditors bore such a relation to the Carbon Timber Company and had such knowledge of its business that at the time of this transfer and conveyance they had cause to believe that the instrument was intended as and would operate as a preference in their favor; further, that this transfer and conveyance by the Timber Company was made with the intent and purpose on its part to hinder, delay, and defraud its creditors, or some of them.

It is undisputed that the defendants Meyer and Olson, after the delivery to them of said deed of trust, did sell and dispose of and convert all of the property of the Timber Company into money, and out of the proceeds of the sale paid themselves compensation for services, and paid out of the proceeds other amounts to other persons, and that they still had in their possession approximately $30,000, part proceeds of sales of the property of said company.

Under the provisions of this deed and the record as to the disposition of the property of the Timber Company by the trustees, this is clearly a case wherein the instrument, so termed a "deed of trust," was in truth and fact an assignment for benefit of creditors; the trustees being authorized to take possession of all the property conveyed to them at such time as they might elect, not requiring any default on the part of the Timber Company, but leaving the possession in the trustees, with full power to sell, and a direction for the application of proceeds to the payment of the creditors therein named. Defendants urge the name of the instrument, "deed of trust," as being inconsistent with an intent on the part of the Carbon Timber Company to make an assignment for the benefit of its creditors. It may be suggested that there is no reservation in this instrument to the Timber Company of right of redemption, and the intention of the Timber Company must determine the character of the conveyance. It appears conclusively that it was the intent and purpose of the Timber Company to divest itself of the title and control of this property, and by the instrument itself appropriated the property and its proceeds to the payment of its creditors pro rata. Notwithstanding the name given this instrument, it was in fact an assignment for the benefit of creditors of the defendant Carbon Timber Company. Cadwell's Bank v. Crittenden, 66 Iowa, 237, 23 N. W. 646; In re Gutwillig (D. C.) 90 Fed. 475; Appolos v.

Brady, 49 Fed. 401, 1 C. C. A. 299; May v. Tenney, 148 U. S. 60, 13 Sup. Ct. 491.

[2] Plaintiff alleged priority of its claim for the amount that it had paid to the United States in settlement for the shortcomings of the Timber Company, with interest thereon at 8 per cent. from the date of such payments, basing such priority upon sections 3466 and 3468 of the Revised Statutes of the United States. Section 3466 provides that—

"Whenever any person indebted to the United States is insolvent, * * * the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, * * * as to cases in which an act of bankruptcy is committed."

Section 3468 provides that—

"Whenever the principal in any bond given to the United States is insolvent, * * * and * * * any surety on the bond * * * pays to the United States the money due upon such bond, such surety * * * shall have the like priority for the recovery and receipt of the moneys out of the estate and effects of such insolvent * * * as is secured to the United States, and may bring and maintain a suit upon the bond, in law or equity, in his own name, for the recovery of all moneys paid thereon."

Applying the provisions of this statute to the facts alleged in the bill of complaint, both as stated originally and as amended, the trial court rightfully found that the plaintiff had brought itself within the provisions of the statute and was entitled to priority for the amount so paid by it.

It is admitted that the defendant Carbon Timber Company did not have property sufficient to pay its debts at the time that it made this voluntary assignment, and therefore, under the provisions of this statute the debts due the United States have priority and must first be satisfied. Such priority of the United States attached at the instant the deed was executed. Therefore the title conveyed by the Carbon Timber Company to Meyer and Olson, as trustees for the benefit of those named in the instrument in question, was subject to the said right of priority in favor of the plaintiff by virtue of its right of subrogation. Meyer and Olson, by operation of law, became the trustees for the United States and for the plaintiff, subrogated to its rights to the extent of the amount due for moneys paid by the plaintiff to the United States.

[3] It may be added that the provisions of these statutes of the United States supersede the state laws upon a distribution of assets coming within and effected by its provisions. It has been uniformly held that, whether in a case of insolvency, death, or assignment, the property of a debtor passes to the assignee, executor or administrator subject to the priority of the United States, and while it does not prevent the transmission of the property, it does give a preference to payment out of the proceeds. Brent v. President and Directors of Bank of Washington, 10 Pet. 596, 9 L. Ed. 547.

Defendants say, however, that, admitting there was a preference in favor of the United States, the plaintiff is not entitled to its enforce-

ment in its behalf. The plaintiff as surety on the original contract is entitled to assert the equitable doctrine of subrogation. This right is never accorded in equity to one who is a mere volunteer in paying a debt of one person to another. The doctrine of subrogation is a pure, unmixed equity, having its foundation in the principles of natural justice. This plaintiff has brought itself within the specific terms of the statute above quoted and is, therefore, entitled to assert its right of subrogation. U. S. v. Hitchcock, 164 U. S. 227, 17 Sup. Ct. 142, 41 L. Ed. 412.

The record, practically by undisputed facts, supports the findings of the trial court in favor of the plaintiff and against defendants for the amount paid by plaintiff to the United States upon its bond in behalf of defendant Carbon Timber Company.

Defendants further contend that the Bankruptcy Act of 1898 (Comp. St. §§ 9585–9656) modified the rule of priority established by sections 3466–3468, U. S. R. S., and insist that the United States is not entitled to a preference in the payment of its claims as against labor claimants, and that therefore the judgment and findings as to priority made by the court below should be reversed, citing Guarantee Title & Trust Co., Trustee, v. Title Guaranty & Surety Co., 224 U. S. 152, 32 Sup. Ct. 457, 56 L. Ed. 706. In this case the court, construing the act of 1898, determined that it gave labor performed within three months prior to the petition in bankruptcy preference as against the surety, basing its opinion on the provisions of section 64 of the Bankruptcy Act (Comp. St. § 9648).

Reference to the record discloses that the plaintiff alleged in its bill of complaint that the trustees named in the deed of trust paid $15,-344.92, defendants in their answers admitting the payment of that amount to labor claimants, but there is no allegation in the answers or showing in the record that labor claimants were not thereby paid in full, or that there are unpaid claims for labor performed within three months before the filing of the deed of trust.

Therefore, from defendants' own viewpoint, if it is conceded that this is a proceeding in bankruptcy, and that plaintiff cannot rely upon the statutes under which it insists this action was brought, still the contention of the defendants is not well taken, and they have failed to bring themselves within the terms of said decision upon which they rely.

[4] The decree of the trial court denied interest to the plaintiff upon the amount of its claim, prior to the date of the decree. From this portion of the judgment the Surety Company prosecutes its appeal, alleging failure to allow interest as the sole assignment of error. The plaintiff contends that it was entitled to interest at 8 per cent. per annum upon the amounts paid by it for the default of the Timber Company, which had been ascertained in the manner authorized by the contract between the plaintiff and the Timber Company, and for which it was, by the terms of its bond, liable to the United States of America, together with interest, if it had refused to make the payments at the time of the ascertainment of the amount and the demand for payment. The contention of the plaintiff is that it made this payment for the use

and benefit of the Timber Company, under its written authority, and that it is entitled to interest thereon.

The statutes of Wyoming, where this contract was executed, provide, by section 3358, as follows:

"On money due on any instrument in writing, in the absence of contract specifying the rate, or on settlement of an account from the day balance shall be agreed upon; on money received to the use of another, and retained without the owner's consent, express or implied, from the receipt thereof, and on money loaned or due, and withheld by unreasonable delay of payment, interest shall be allowed at the rate of eight per cent. per annum. Unsettled accounts shall bear interest after thirty days from the date of the last item thereof."

We think that the plaintiff was entitled to interest upon these payments made under the provisions of this contract under the foregoing provision, "on money due on any instrument in writing," and possibly within the other provision, "and money * * * due and withheld by unreasonable delay of payment."

The defendants reply, however, that, even if the plaintiff was entitled to interest under the statutes of Wyoming, the claim of plaintiff was unliquidated, and therefore entitled to no interest prior to the date of the decree. This makes it necessary to determine when a claim is liquidated.

The amount was ascertained under and by virtue of specific authority of the terms of the contract entered into between the Surety Company and the Timber Company, and, having been definitely ascertained, was paid by the plaintiff. This is undisputed. It follows that the amount so paid by the plaintiff to the United States was then due from the defendant to the plaintiff. It required no act of either plaintiff or defendant Timber Company to make the amount due definite and certain, and the time that it became due was the time of payment by plaintiff. Certainly, therefore, it was a liquidated debt.

[5] Reference to defendants' brief discloses that the defendants further rely upon the proposition that after property of an insolvent passes into the hands of a receiver or of an assignee in insolvency, interest is not allowed on the claims against the funds.

The first citation upon which defendants rely, Thomas v. Western Car Co., 149 U. S. 95, 13 Sup. Ct. 824, 37 L. E. 663, is a case in which the opinion was written by Judge Shiras, and involved the amount due for the repair of cars in the hands of a receiver, and it was held that in that case the claim was not to be a preferred debt having priority over the mortgage debt, and the car company in this case was not allowed interest, and the opinion in the last paragraph states the doctrine as follows:

"As a general rule, after property of an insolvent passes into the hands of a receiver or of an assignee in insolvency, interest is not allowed on the claims against the funds. The delay in distribution is the act of the law; it is a necessary incident to the settlement of the estate. [Citations.] We see no reason in departing from this rule in a case like the present, where such a claim would be paid out of moneys that fall far short of paying the mortgage debt."

The next citation of defendant is Richmond Co. v. Richmond Br. Co., 15 C. C. A. 299, 68 Fed. 115, 34 L. R. A. 625. This is a case tried before Taft and Lurton, Circuit Judges, and a District Judge. Lurton, Circuit Judge, wrote the opinion. This case involved the rights of subcontractors and others to priority among the various claimants to funds arising from the sale of a railroad. In the course of the opinion the court quotes with approval from Henderson Cotton Mfg. Co. v. Lowell Machine Shops, 86 Ky. 668, 7 S. W. 142, concerning the allowance of interest upon an account, as follows:

"The true ground upon which to put the allowance of interest is the fault of the party who is to pay the debt. If he has made default of payment, then, ex æquo et bono, he should reimburse the creditor for keeping him out of the use of his money. He should render an equivalent for the use of what is not his own. If there be a specified time for payment, and a failure to then pay, or a demand of payment of a liquidated claim, and default, then the debt should, as a matter of law, bear interest from the time of such failure. This is the current of authority, and it is supported by both right and reason."

This opinion then proceeds to dispose of the case above cited:

"Neither is there anything in the case of Redfield v. Iron Co., 110 U. S. 174, 3 Sup. Ct. 570 [28 L. Ed. 109], or Thomas v. Car Co., 149 U. S. 116, 13 Sup. Ct. 824 [37 L. Ed. 663], which conflicts with the doctrine as stated."

Thereupon the court construes the case cited by defendants, Thomas v. Car Co., supra, as follows:

"There seems to have been no definite time agreed upon as to payment, and interest was disallowed because, as the court said, the delay in payment 'was occasioned by resisting demands made by the car company, which the result of the litigation shows were excessive, if not extortionate.' The contract company was in default, and interest is properly allowable from the time it failed to pay according to its promise, by way of compensation for the delay in payment."

The case further proceeds as follows:

"Neither is there anything in the fact that the railroad company is insolvent, nor in the fact that the allowance of interest will diminish the fund to which the bondholders may look for the payment of their bonds. The language relied upon in support of the decree disallowing interest, from the opinion in Thomas v. Car Co., that 'as a general rule, after property of an insolvent passes into the hands of a receiver, or of an assignee in insolvency, interest is not allowable on the claims against the funds,' was not a point upon which that case turned, and was doubtless intended to apply only to a case where the fund is insufficient to pay all *and the creditors are all of the same rank,* as in the distribution of the assets of an insolvent bank."—citing White v. Knox, 111 U. S. 784, 4 Sup. Ct. 686, 28 L. Ed. 603, and Bank v. Armstrong, 59 Fed. 372, 8 C. C. A. 155, 28 L. R. A. 231. (The italics are ours.)

In the case at bar, as in the case last above cited, there is no question of the distribution of insufficient assets among lienholders of the same rank. The trial court correctly found in this case that plaintiff's claim was preferred to all others, and therefore cannot be determined within the terms of the opinion in Thomas v. Car Co., supra. The plaintiff was therefore entitled to interest at the rate of 8 per cent. per annum on its respective claims from the respective dates of payment as they appear in the bill of complaint.

The record, therefore, does not sustain the defendants' assignments of error. The only error committed by the trial court is the one assigned by the plaintiff. The case is remanded, and the trial court is directed to modify the decree entered below, by adding thereto the amount of interest at 8 per cent. per annum upon the amounts paid by the plaintiff to the United States from the dates of payment, respectively, and the decree, as so modified is

Affirmed.

CARLAND, Circuit Judge. I concur in what is said in the opinion, but, as the Surety Company's claim for interest was not paid upon the bonds to the United States, I am of the opinion that it is not entitled to a preference, although I agree that the Surety Company has the right to recover the interest claimed from the Timber Company, if they have any assets to pay it.