**HUBBARD INV. CO. v. BRAST et al.**
**No. 3271.**

Circuit Court of Appeals, Fourth Circuit.
June 13, 1932.

Hubbard & Hubbard and Nelson C. Hubbard, all of Wheeling, W. Va., for appellant.

Arthur Arnold, U. S. Atty., of Parkersburg, W. Va., and William C. Howard, Asst. U. S. Atty., of Wheeling, W. Va., for appellees Brast and Sears.

Before PARKER and NORTHCOTT, Circuit Judges, and WAY, District Judge.

PARKER, Circuit Judge.

This suit was instituted in the court below to enjoin the collector of internal revenue of the United States for the collection district of West Virginia from selling under warrant of distraint a certain interest in real estate to which complainant claimed that it was equitably entitled. Complainant was the Hubbard Investment Company, a West Virginia corporation, which was organized in December, 1924, by one Nelson C. Hubbard, who owned all of its capital stock. The distraint complained of was made to enforce the collection of federal income and profits taxes assessed against Hubbard. The property upon which the distraint was levied was a one-sixth interest in real estate held by trustees in trust for Hubbard, the allegation being that this interest was in reality the property of the investment company. Plaintiff obtained a temporary restraining order enjoining the sale of the property by the collector; but upon final hearing this restraining order was dissolved, injunction was denied, and a final decree was entered dismissing the bill. From this decree complainant has appealed.

The case was heard upon the bill, the answer, and the deposition of Hubbard. The bill alleges that the investment company was organized by Hubbard; that he has at all times been the equitable owner of all of its capital stock; that on December 31, 1924, he transferred to it practically all of his intangible property in consideration of its assumption of his indebtedness to banks and the issuance to him of its capital stock; that the interest in the real estate upon which

distraint was levied is property of the investment company; that, while the deed of trust names Hubbard as the owner of this interest, it was drawn by counsel who did not, understand the situation and was signed by Hubbard as a matter of convenience to avoid rewriting and re-execution by other parties; that the purchase of the property was financed by a loan for which a stock certificate of the investment company was pledged as collateral and that sundry installments of interest on the loan and a $500 assessment were paid by checks drawn against its funds; that both Hubbard and the investment company have financial obligations which they are unable to meet; that the latter is entitled to apply the property distrained in satisfaction of its obligations; that the collector has levied distraint against the property; and that, unless he is restrained, he will sell same for the enforcement of the taxes assessed against Hubbard. The answer of the collector admits the distraint and the intention to sell the property levied on for the purpose of collecting taxes of Hubbard. It avers, however, that Hubbard is the equitable owner of the property and denies that the investment company has any interest therein.

The only evidence offered in support of the allegations of the bill was the deposition of Hubbard. He testified that he was president of the investment company and since its organization had conducted all of its affairs, stating that he had formed it as a private holding company for his investments, thinking that this would be a convenience during his lifetime and would simplify the handling of his estate in case of death. He stated further that the investment company took over all of his intangible property on December 31, 1924, assuming the payment of his indebtedness at banks and issuing to him all of its capital stock; but he gave no details as to the value of the property transferred, as to the amount of the indebtedness assumed or as to any payments by the corporation on account of the indebtedness. With respect to the acquisition of the trust property, he stated that the investment company had financed the purchase by the use of a stock certificate and that it had paid certain relatively small installments of interest and an assessment of $500. He produced the checks covering the interest payments and the assessment, but did not produce the note given for the money to make the initial payment and did not remember whether it had been signed by the investment company or by himself. He admitted that the amount due for the purchase money was rapidly reduced

as a result of sales made by the trustees. So far as the testimony shows, the company paid nothing for the interest in the property at the time of its acquisition and has paid nothing since except interest amounting to approximately $175 and the $500 assessment. A number of other matters, such as the income tax returns of Hubbard and of the investment company, were covered by his testimony; but we deem them immaterial.

So far as the interest of creditors is concerned, while Hubbard testified that both he and the investment company had lost money and that neither was able to meet outstanding obligations, there is no evidence that upon a final adjustment of accounts and equities between Hubbard and the company, either the company or its creditors would be injured as a result of the sale of the property under the distraint warrant. No receiver for the company has been appointed, and no creditor of the company has intervened or asked relief at the hands of the court.

We think that the court below properly refused the injunction and dismissed the bill, not, however, because of the provisions of section 3224 of the Revised Statutes (26 USCA § 154). That section forbids the maintenance of a suit, the purpose of which is to restrain the "assessment or collection of any tax." It has no application to a suit instituted, not to restrain the assessment or collection of a tax, but the sale of property which does not belong to the taxpayer and is not subject to distraint and sale for taxes assessed against him. Long v. Rasmussen (D. C.) 281 F. 236; Pool v. Walsh (C. C. A. 9th) 282 F. 620; Owensboro Ditcher & Grader Co. v. Lucas (D. C.) 18 F.(2d) 798; Trinacia Real Estate Co. v. Clarke (D. C.) 34 F. (2d) 325; Livingston v. Becker (D. C.) 40 F.(2d) 673. And see Miller v. Standard Nut Margarine Co. of Florida, 284 U. S. 498, 52 S. Ct. 260, 76 L. Ed. ——. If therefore, this were a case where property equitably belonging to one person were being sold in satisfaction of taxes assessed against another, the statute relied upon would afford no reason for refusing relief.

The case presented, however, is not such a case; for complainant has not satisfactorily established its ownership of the property. On the contrary, the record title is shown to be in Hubbard and there is certainly no sufficient proof to establish a resulting trust in favor of complainant, which must be established by proofs clear and convincing that the person claiming the equitable title actually paid the purchase price. See Straley v. Es-

ser, 117 Va. 135, 83 S. E. 1075; Lench v. Lench, 10 Ves. 571. Here the allegation is merely that the investment company put up stock as collateral to the purchase money note; and Hubbard in his testimony does not recall whether it was he or the company that executed the note. If he made the purchase and assumed the obligation for the purchase money, it would not create an equitable estate in the company that it later paid installments of interest or an assessment for which he was liable. It does not appear that there was even a contract between him and the company that the property was to be held for its benefit; and the most that can be said, viewing the evidence in the light most favorable to the company, is that there was an intention on his part that it should be so held. It is clear that the company had no such title to or interest in the property as a court of equity should protect against seizure for the debts and liabilities of Hubbard, who held the record title. See Waldron v. Poe (D. C.) 1 F.(2d) 932.

In addition to this, there is no such showing of irreparable injury as to warrant action by a court of equity. Even if it be assumed that the company held the equitable title to the property, we cannot disregard the fact that all of its stock was owned by Hubbard and that any loss which it might sustain would fall ultimately upon him. It is true that if the company were shown to be the owner of an interest in the property, a court of equity should protect same for its creditors if it were further shown that they would sustain irreparable loss as a result of the contemplated sale; but no creditor is asking protection and it does not appear that the interest of creditors will necessarily be affected. The mere fact that the company owes debts which it is unable to pay does not constitute such showing; for it does not appear how much of its indebtedness is owing to Hubbard or how creditors will be affected upon a final adjustment of accounts and equities between him and the company. The company is but an alter ego for the handling of his investments; and while we do not hold that the separate identity of the corporation should be ignored under all circumstances, it should not be allowed to stand in the way of the enforcement of the obligations of Hubbard except upon a clear showing that others will suffer as a result of ignoring it. Where all of the stock of a corporation is owned by one person who has exclusive control of its affairs, a bill asking a court of equity to interfere with the sale of property standing in his name for the pay-

ment of his debts, on the ground that the corporation has an equitable interest in the property, must clearly show not only the nature and extent of that interest, but also the exact manner in which irreparable injury will be sustained by creditors other than the sole stockholder; and the evidence to sustain the allegations of the bill must be clear, cogent and convincing. Neither the bill nor the evidence offered in support of its allegations meets this test.

The decree dismissing the bill was correct, not because the court was lacking in jurisdiction, but because the bill was lacking in equity. It will, therefore, be affirmed.

Affirmed.