**TOLEDO EDISON CO. v. McMAKEN, Collector of Internal Revenue (UNITED STATES, Intervener).**

**No. 7744.**

Circuit Court of Appeals, Sixth Circuit.
April 5, 1939.

George D. Welles, of Toledo, Ohio (Welles, Kelsey & Cobourn, George D. Welles, and Harry S. Bugbee, all of Toledo, Ohio, on the brief), for appellant.

Wm. B. Waldo, of Washington, D. C. (James W. Morris, Sewall Key, Norman D. Keller, and Wm. B. Waldo, all of Washington, D. C., Emerich B. Freed, of Cleveland, Ohio, and Gerald P. Openlander, of Toledo, Ohio, on the brief), for intervenor.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

The appeal involves an alleged overpayment of corporation excise taxes for 1909 and 1910 and consolidated suits for recovery begun over twenty-six years ago against McMaken, the then Collector of Internal Revenue at Toledo, Ohio. The petitions were filed October 16, 1912. McMaken is long since dead, his first administratrix is superseded by another, the two District Judges who participated in the proceedings are likewise deceased, the plaintiff has undergone a metamorphosis, and the record, disclosing long intervals of immobility by court and litigants, have made the problem presented to us difficult. We make no effort to apportion the blame for long delay and unnecessary complications, but proceed to a recital of facts thought to be material and legal contentions of appellant and the United States, which as intervenor challenges the appeal and moves its dismissal.

The appellant, then known as The Toledo Railways & Light Company, sought to recover as overpayments sums paid to the collector under protest. The defendant appeared through the United States Attorney for the District, entered a general denial, and asserted the taxes to have been collected under the authority of a certification by the Commissioner of Internal Revenue.

Nothing further appears to have been done until July 1, 1918, when upon waiver of jury the cases were tried to the court. At the hearing the plaintiff moved in each case to substitute for the defendant, Frank B. Niles, his successor in office as Collector of Internal Revenue, and orders were entered granting the motions and making the substitutions. The cases were then submitted upon stipulated facts. On September 4, 1919, the United States Attorney moved to dismiss each case on the ground that the defendant therein was suable only in his personal and not in his official capacity, and that the effect of the orders of substitution had been voluntary dismissals of the actions against McMaken. Nearly three years later the District Judge in a memorandum opinion signified agreement with the contention raised by the motions, but no orders were entered in pursuance thereof. On April 3, 1922, of the same term, the plaintiff moved to vacate and set aside the orders substituting Niles for McMaken and to reinstate McMaken as defendant of record, with McMaken's written consent. Subsequently McMaken died, his widow as administratrix of his estate entered her appearance as defendant and consented to the vacating of the substitutions.

Another interval of six years elapsed. On December 26, 1928, orders were entered granting the motions to vacate, but each limited "to the extent that said prior orders substituted Frank B. Niles personally as defendant herein for the original defendant William V. McMaken personally and that said prior order of substitution is hereby vacated to said extent and Georgie D. McMaken, administratrix of the estate of William V. McMaken, deceased, is hereby instated as the defendant herein personally, but not as a representative of the United States. It is further ordered that this order shall not work to reconnect the United States with plaintiff's contention herein or to compel it to reassume the burdens involved from the filing of this suit. * * *" Plaintiff immediately filed motions for judgment, and with the approval of the United States Attorney, they were entered upon the original record, but with the notation that they were judgments against McMaken's administratrix personally and not as a representative of the United States. Thereupon both parties to the suits filed motions for certificates of probable cause, with a stipulation that McMaken as Collector had collected the taxes in question in accordance with assessments made and cer-

tified by the Commissioner and that the money had been paid into the Treasury of the United States. These motions were presented on February 23, 1929, to the late Judge Hahn, then recently appointed District Judge, and were granted. On April 20, 1929, the United States intervened and moved in each case for an order vacating the order of February 23d and for a rehearing upon the motions. Two years later in the one case, and four years later in the other, its motions were granted and the certificates vacated. Subsequently the death of Georgie D. McMaken was suggested and the cases were revived in the name of Myra McMaken Pickett as successor administratrix of McMaken's estate. On June 6, 1934, the plaintiff filed new motions for certificates of probable cause and the United States on its own behalf moved to strike them from the files and to dismiss. Discussions followed at the suggestion of the court in efforts to reach an agreement as to the amount of the overpayments because of concessions that the judgments were not responsive to the stipulated facts. No agreement being reached, the late District Judge Killits denied the motions for certificates of probable cause and nunc pro tunc as of March 23, 1922, dismissed the petitions.

Upon this confusing and halting sequence of events the appellant challenges the nunc pro tunc orders of dismissal as made too late, and the orders denying its motions for certificates of probable cause as beyond the scope of discretion. The District Court, it urges, had no power in 1936 to vacate judgments entered in 1928 when no extension of the term during which the judgments were entered had been sought or granted, but that the court should have modified the judgments to accord with the amounts overpaid in response to the stipulated facts and concessions of the intervenor; that it should have granted certificates of probable cause to the amount of the conceded liability, since the granting of such certificates under the provisions of T. 28, U.S.C. § 842, 28 U.S.C.A. § 842, when the Collector has acted under the direction of a proper officer of the Government and has paid the monies collected as taxes into the Treasury, is mandatory, and even if discretionary, the denial of them is an abuse of discretion when there is a showing of probable cause for the making of the collections. Upon behalf of the intervenor it is urged that the orders denying the motions for certificates of probable cause are orders

made after entry of judgment, and so not appealable, wherefore the appeal should be dismissed; that in any event the taxpayer having substituted the successor collector for the collector who had received the tax payment and having accepted as a condition for reinstatement of the original defendant a provision that the judgments should not bind the United States, is not entitled as of right to certificates of probable cause.

■ Construing the orders denying motions for certificates as final and appealable in respect to the intervenor, since through their instrumentality alone may the judgments against the collector or his estate be made a charge on the United States, and confining decision to them, we recognize a fundamental infirmity at the root of the appeal from such orders that makes it unnecessary to decide all, if any, of the controverted issues of law.

■ When upon motions of the appellant the successor collector was substituted for McMaken, the latter disappeared as a defendant in the cases. This proposition we think to be incontrovertible. To substitute, both in common parlance and in the definition of the lexicographers, is to put one person or thing in the place of another. Niles was instated as defendant in place of McMaken and the latter was eliminated. Decisions typified by New York Evening Post Co. v. Chaloner, 2 Cir., 265 F. 204, wherein plaintiffs bringing suit in one capacity are permitted to maintain it in another, are not apposite, nor is Union Trust Co. v. Wardell, 258 U.S. 537, 42 S.Ct. 393, 66 L.Ed. 753, contra, since there was in that case no substitution but the addition of the successor collector as defendant, with express reservation of remedy against the original defendant. Pullman Company v. Croom, 231 U.S. 571, 34 S.Ct. 182, 58 L.Ed. 375, does not reach the point since it involves liability of a public officer which does not survive his death or the expiration of his term, nor follow his estate, and may not in absence of statute be revived against his successor in office.

■ Suits against the collector for recovery of taxes collected are personal actions. Sage v. United States, 250 U.S. 33, 39 S.Ct. 415, 63 L.Ed. 828; Smietanka v. Indiana Steel Co., 257 U.S. 1, 42 S.Ct. 1, 66 L.Ed. 99; Texas & Pacific Ry. Co. v. United States, 289 U.S. 627, 53 S.Ct. 768, 77 L.Ed. 1410. They follow the collector after he leaves office, Union Trust Co. v. Wardell, supra, and are enforceable after death against the collector's personal representative. Patton v. Brady, 184 U.S. 608, 22 S.Ct. 493, 46 L.Ed. 713. They are not enforceable against successors in office. Union Trust Co. v. Wardell, supra. By virtue, however, of the Act of March 3, 1863, 12 Stat. 741, § 12, and provisions carried forward into subsequent statutes, R.S. § 989, 28 U.S.C. § 842, 28 U.S.C.A. § 842, no execution is permitted to issue against a collector when recovery is had in a suit against him for money exacted or paid to him and by him paid into the Treasury in the performance of his official duty when the court certifies that there was probable cause for the act done by him, or that he acted under the directions of the Secretary of the Treasury or other proper officer of the Government, and the amount recovered against him upon final judgment is to be paid out of the Treasury.

■ When Niles was substituted for McMaken the statute of limitations for the recovery of taxes paid in 1909 and 1910 had run. McMaken, however, consented to the vacating of the order of substitution and to his reinstatement in the case, and so likewise did his estate. The statute of limitations may be waived, and insofar as the judgments thereafter sought were against McMaken or his estate, without consequences to the United States, they may not now be challenged.

■ We are concerned, however, with procedure whereby a personal judgment against the collector is sought to be converted into a judgment which is in effect one against the Government. It has been held that in a suit against a collector for the recovery of a tax erroneously collected, the statute of limitations barring the suit may by failure to claim the benefit of it be waived (Retzer v. Wood, Collector, 109 U.S. 185, 188, 3 S.Ct. 164, 27 L.Ed. 900), and it has been said that the United States is a stranger to an action against the collector until after the judgment is entered against him (Sage v. United States, supra). But while a suit against the collector for the recovery of a tax unlawfully collected is personal, the consequence of a judgment against him is in certain circumstances a mandatory charge upon the Treasury of the United States. Moore Ice Cream Co. v. Rose, 289 U.S. 373, 53 S.Ct. 620, 77 L.Ed. 1265. It is fundamental, however, that the United States may not be sued without its consent, for immunity from suit is an attribute of sovereignty. Lynch v. United

States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434; Coleman v. United States, 6 Cir., 100 F.2d 903. For the recovery of erroneously paid taxes the United States had consented up to the time of the judgments below to be sued in its own name in the Court of Claims, and had permitted suits with resultant obligations to itself against its collector in the District Court. While suits against the collector are in their formal aspects personal, they are by judgment for plaintiff and the presence of circumstances compelling an issue of a certificate of probable cause converted into suits against the United States, since execution against the formal defendant is then proscribed and the judgment must be paid out of the Treasury. The problem as we view it may therefore be stated thus: May the collector by a waiver of the statute of limitations which bars the remedy against him, and so its result in obligation to the Government, impose upon the Government the consequences of a judgment without its consent?

As already indicated, Retzer v. Wood, supra, decides that the collector may waive the statute of limitations by failing to plead it or bring it to the attention of the court as a defense at the trial. But the consequences of a judgment against the collector in obligation upon the United States was not there considered, and there was no question before the court involving the issuance of a certificate of probable cause either under command of the statute or in the exercise of discretion. Be it noted also that the case was decided in 1883, when the Government was not suable as freely as now, and before the court had announced the doctrine that in certain circumstances the obligation to issue a certificate of probable cause is mandatory.

■ This leads us to analysis of the decision in Moore · Ice Cream Co. v. Rose, supra, which proclaimed the doctrine. There it was said [289 U.S. 373, 53 S.Ct. 623]: "A suit against a collector who has collected a tax in the fulfillment of a ministerial duty is to-day an anomalous relic of bygone modes of thought. He is not suable as a trespasser, nor is he to pay out of his own purse. He is made a defendant because the statute has said for many years that such a remedy shall exist, though he has been guilty of no wrong, and though another is to pay." And again, "in such circumstances his presence as a defendant is merely a remedial expedient for bringing the government into court." In ruling

that the collector may not object in a suit against him by a taxpayer that the latter has failed to pay the assessed taxes under protest, the court said: "One who is brought before the court as a formal party only will not be heard to object that there has been a denial of due process in enlarging the liability to be borne by some one else." The significance of this language is, that while the suit against the collector is personal, it has incidents of a suit against the Government. So when the statute abolished the rule that taxes unlawfully paid might be recovered only when paid under protest, with the proviso that pending suits should be unaffected by the change, the remedial section extended to payments without protest made when protest still was necessary, on the ground inter alia that a formal party may not object to a provision which enlarges liability not against him but against someone else. The appositeness of the reasoning to the present case at once suggests itself. The collector as a formal party to a suit for the recovery of a tax, however free he may be to enlarge the taxpayer's obligation against himself, is without power to enlarge the Government's obligation, or to waive as against the Government a limitation which is the condition under which the Government consents to an obligation being created against itself and to that extent surrenders its sovereign immunity to suit.

It may be argued from this that if we hold the collector powerless to waive a limitation upon the statutory obligation of the Government to pay a judgment against the collector, we perforce interpret Moore Ice Cream Co. v. Rose as overruling the doctrine of the Sage case, and the suit against the collector therefor being considered in effect, whatever its formal character, a suit against the United States, it did not abate by the substitution of Niles for McMaken. We think this does not follow. The United States consenting to an obligation being imposed upon it may condition its consent to a formalism which includes even that "anomalous relic of bygone days" requiring the formal defendant in the District Court to be the collector and not the Government.

■ In the Moore case circumstances were such as called for no exercise of discretion. It was also the thought of the court that no situation calling for discretion could ever be presented where a collector has done no more than accept pay-

ment of a tax assessed by a superior who has been invested by the statute with power to command. Nevertheless the court left open the question as to whether it might develop in like circumstances that a certificate might issue as a matter of discretion. It did not decide that the court would be obliged to issue it in every situation. Certainly a fraudulent or collusive judgment, too late to be rectified by normal procedural expedients and then only at the behest of the judgment debtor, or a judgment as here, admittedly erroneous, should impose no imperative duty upon the court to issue the certificate. So here we conclude, within the narrow limits of the problem as we view it, and deciding nothing more, that a judgment resulting from a waiver of the statutory bar, which the defendant collector was without power to make so as to fasten an obligation upon the United States, and which without waiver could not be imposed upon it, does not subject the court to the command of the statute that it issue certificates of probable cause, and granting discretion, there was no abuse of it.

Orders affirmed.