**GLENN v. AMERICAN SURETY CO. et al.**
No. 10302.

Circuit Court of Appeals, Sixth Circuit
April 1, 1947.

MARTIN, Circuit Judge, dissenting.

Irving I. Axelrod, of Washington, D. C. (Sewall Key, Louis Monarch and Norman

S. Altman, all of Washington, D. C., and David C. Walls and A. Roy Copeland, both of Louisville, Ky., on the brief), for appellant.

Robert L. Blackwell, of Louisville, Ky. (Wm. Marshall Bullitt and R. Lee Blackwell, both of Louisville, Ky., on the brief; Bullitt & Middleton, of Louisville, Ky., of counsel), for appellees.

Before SIMONS, ALLEN and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

The only substantive question that appears to be left of the controversy in the present posture of the appeal, is whether sureties for the faithful performance by a contractor after satisfying the debts of their principal, are entitled to interest upon the amounts expended, recoverable out of retained percentages as against the claim of the government for taxes asserted against the same funds. The right of the sureties to recover their expenditures in principal amount, though unsuccessfully contested below, is not here challenged. Before reaching that question, however, it becomes necessary to solve a procedural problem raised by the appellees' motion to dismiss the appeal, and a motion of the appellant to correct the caption of the record.

The controversy arose out of the following circumstances. On October 3, 1941, one W. J. Paul entered into a contract with the Louisville Municipal Housing Commission to perform certain public housing construction work. Paul, as principal, and the appellees as sureties, delivered to the Housing Commission a faithful performance bond in the penal sum of $540,-214, guaranteeing the faithful performance of the construction work and the payment of all obligations incurred in connection with it. Paul completed the contract but defaulted in the payment of labor and material claims in amounts totaling $52,571.57. Pursuant to the terms of the contract the Housing Commission withheld from Paul $59,647.72. On August 12, 1943, Glenn, Collector of Internal Revenue for Kentucky, served a notice of levy and a warrant for distraint upon the Housing Commission for delinquent internal revenue taxes owed by Paul, in the amount of $13,029.28. The Kentucky Unemployment Compensation Commission also filed a lien against the fund, but since it has not appealed its claim of lien disappears from the case. Upon being notified that the Housing Commission proposed to pay the federal tax out of the retained percentages, the sureties brought suit to restrain the Commission from paying any money to the Collector until their claims were satisfied, and for a declaration of right that their claims were prior liens against the retained fund. A temporary restraining order was followed by a temporary injunction and the sureties paid the claims against Paul in amounts totaling $52,571.57. The Collector was made a party defendant to the suit, the United States intervened and, upon motion for summary judgment, the sureties were adjudged to have an equitable lien upon the fund which had, in the meanwhile, been deposited in the registry of the court, in an amount covering their payment of the debts of Paul with interest from the date of payment, and the clerk of the court was directed to make payment to them out of the fund on deposit in the registry. The facts are not in dispute and are sufficiently recited in the memorandum of the district judge. American Surety Co. et al. v. City of Louisville Municipal Housing Commission et al., D.C., 63 F.Supp. 486.

On March 8, 1946, and within the jurisdictional period, the Collector filed a notice of appeal. After several extensions a record was filed and the appeal docketed in the name of the United States on July 17, 1946. Subsequently, a motion was filed to correct the notice of appeal by substituting the United States, intervenor, for the Collector, and on July 29 an order was entered correcting the notice of appeal pursuant to the motion. Thereafter, by stipulation, the order of July 29 was vacated, and on October 16 an order was entered denying the motion of July 17, but without prejudice to a consideration of the rights of the United States as they may appear at the hearing of the case upon its merits. In January, 1947, the sureties moved to docket and dismiss the appeal of Glenn because he had failed to file a record and to docket his appeal on or before the return date, as enlarged, and to dismiss the appeal of the

United States because it had failed to file a notice of appeal within the required time. The United States thereupon moved that the caption of the record and docket entry be corrected by a nunc pro tunc decree substituting the Collector for the United States as the appellant.

We have, then, this situation. The Collector filed the notice of appeal but did not file a record. The United States filed a record but had failed to notice an appeal within the statutory period. The United States now seeks to correct the docket by substituting Glenn as the appellant, which the sureties oppose. The sureties seek a dismissal of the appeal because of the variance between the party filing the notice and the party perfecting the record. Rule 73(g) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, requires a docketing of the appeal within 40 days from the date of notice, and Rule 73(a) provides that the failure of the appellant to take any further steps following his notice of appeal will not affect its validity; but is ground for such remedies as may seem appropriate to the appellate court, including dismissal of the appeal. That remedy the sureties would now have us apply. Our jurisdiction attaches at the time of filing the notice of appeal, and whether a dilatory appellant should be allowed to proceed is within our discretion. Ispass v. Pyramid Motor Freight Corp., 2 Cir., 152 Fed.2d 619. This discretion could be exercised if we grant the motion of the United States to correct the caption of the record, which would make it Glenn's record filed out of time, and this we think ought to be done for it is apparent that the caption of the record was a clerical error made by the United States Attorney who represented both the Collector and the United States as intervenor. The courts, in general, have liberally construed the rule. Mosier v. Federal Reserve Bank, 2 Cir., 132 F.2d 710; Ainsworth v. Gill Glass & Fixture Co., 3 Cir., 104 F.2d 83; National Surety Corp. v. Williams, 8 Cir., 110 F.2d 873.

A more fundamental and less technical ground for permitting the extension and correction, however, appears. The Collector, in asserting the rights of the United States to the reserved fund for the payment of Paul's taxes, was acting not in his individual capacity but as the agent of the United States. Second Nat'l Bank of Saginaw v. Woodworth, D.C.S.D.Mich., 54 F.2d 672, affirmed 6 Cir., 66 F.2d 170. While he was the formal party defendant, the real party in interest was the United States, which, by its intervention in the suit, likewise became a formal party thereto. The interests of the Collector and the United States were, however, identical. The tax, if collected, would be remitted to the Treasury of the United States. The appeal could have been prosecuted either by Glenn or the government. While it has been held, Sage v. United States, 250 U.S. 33, 39 S.Ct. 415, 63 L.Ed. 828, that a suit against the Collector for the recovery of an illegally held tax is not a suit against the United States, in respect to the application of the doctrine of res judicata, yet it has also been held that a judgment for or against the United States is binding upon the Collector who is the agent or trustee for the government. Second Nat'l Bank of Saginaw v. Woodworth, supra. However, it has been with great clarity pointed out that a suit against a Collector is today "an anomalous relic of bygone modes of thought" when he is engaged merely in the fulfillment of a ministerial duty. Moore Ice Cream Co. v. Rose, 289 U.S. 373, 382, 53 S.Ct. 620, 623, 77 L.Ed. 1265. There Mr. Justice Cardozo observed, "There may have been utility in such procedural devices in days when the government was not suable as freely as now (citing cases). They have little utility today, at all events where the complaint against the officer shows upon its face that in the process of collecting he was acting in the line of duty, * * * In such circumstances his presence as a defendant is merely a remedial expedient for bringing the government into court." Whether the present appeal could be by us entertained in the name of the United States, in view of this identity of interest between the government and the Collector, we need not now decide, but viewing the present situation realistically, we are not persuaded that the appeal should fail because the United States Attorney, through neglect, excusable or otherwise, failed to caption the record in the name of the Collector who had filed the

notice of appeal. We held in Toledo Edison Co. v. McMaken, 6 Cir., 103 F.2d 72, certiorari denied, Toledo Railways & Light Co. v. McMaken, 308 U.S. 569, 60 S.Ct. 82, 84 L.Ed. 477, that while a Collector could expressly or by indirection waive the statute of limitations in a suit against him, he could not impart to such waiver the obligation which the statute, Title 28 U.S.C.A. § 842, imposes upon the government under certain circumstances to pay a judgment rendered against him individually. Similarly, we think, a neglect by the Collector to caption a record on appeal to conform to the notice of appeal, may not deprive the government of its hearing on appeal where the government is not only the real party in interest but is likewise a formal party, and now, by its motion, seeks to have the record conform to the notice. See Porter v. Maule, 5 Cir., 160 F.2d 1. Wherefore, we conclude that the motion to dismiss the appeal must be denied and the motion to correct the caption of the record granted.

■■ The contention of the sureties that if the Collector's name is substituted for that of the United States upon the record and docket entry, he cannot bring this appeal because of the provisions of Title 28 U.S.C.A. § 732, which requires that all suits for recovery of taxes must be brought in the name of the United States, is, of course, without merit. The present suit was not brought by the Collector. He was made a party defendant at the suit of the sureties, and it would be novel doctrine, indeed, to hold a Collector, subjected to an adverse judgment, to be deprived, by reason of this statute, of the right to appeal. It was said in Moore Ice Cream Co. v. Rose, supra, "One who is brought before the court as a formal party only will not be heard to object that there has been a denial of due process in enlarging the liability to be borne by someone else." Similarly, it may be said that those who bring before the court one who is only a formal party will not be heard to challenge the right of such party to defend the suit or to review an adverse judgment.

■ Coming to the substantive issue of law, the appellant is in the anomalous position of declining to assail the judgment for the amount paid by the sureties, yet contesting the award of interest thereon on the ground that it violates § 3653 of the Internal Revenue Code, 26 U.S.C.A.Int.Rev. Code, § 3653, which, with certain exceptions, forbids a suit to restrain the assessment or collection of a tax in any court. The short answer to the contention, if it is still in the case, is that given by the district judge in his preliminary memorandum of December 31, 1943, "The statute, however, applies to actions by taxpayers; it does not apply to a third party seeking to enjoin the Collector from taking his property to pay taxes of another. Tomlinson v. Smith, 7 Cir., 128 F.2d 808; Rothensies v. Ullman, 3 Cir., 110 F.2d 590; Long v. Rasmussen, Collector, D.C., 281 F. 236. See Hubbard Investment Company v. Brast, Collector, 4 Cir., 59 F.2d 709, 710." Neither the validity nor the timeliness of the tax nor the correctness of the amount sought, is here assailed, and the plaintiffs in the suit are under no obligation to pay the tax.

■ There is left the contention that a surety is generally not entitled to interest upon its claim, and that the tax lien is superior to the interest charge because the latter is an unsecured claim against Paul which arose after the effective date of the tax lien. As to the first, the prevailing rule is that a surety has a right to be made whole when it fulfills its obligations under a contract of suretyship, and this includes interest upon the money expended by it in fulfilling its obligations until repaid. American Law Institute, Restatement of Security, § 104; Memphis & Little Rock R. R. Co. v. Dow, 120 U.S. 287, 7 S.Ct. 482, 30 L.Ed. 595; American Surety Co. v. Carbon Timber Co., 8 Cir., 263 F. 295. The rule that interest is not allowable on claims against a bankrupt or insolvent estate, as illustrated in Thomas v. Western Car Co., 149 U.S. 95, 13 S.Ct. 824, 37 L.Ed. 663, is not applicable here and rests upon a different principle. Where there is not enough money to pay all lienholders of the same rank entitled to share in the estate of a bankrupt or an insolvent, the disallowance of interest on all claims is but in pursuance of the rule of equitable treatment to all claimants. Nor is the rule which denies to a surety a profit on a building contract which it completes in default of its principal, available to the

appellant. While interest may, in certain aspects, be considered as a profit to the lender or investor, it is not profit within the doctrine of authorities exemplified by United States Fidelity and Guaranty Co. v. Worthington & Co., 5 Cir., 6 F.2d 502, certiorari denied 269 U.S. 583, 46 S.Ct. 119, 70 L.Ed. 424; Lacy v. Maryland Casualty Co., 4 Cir., 32 F.2d 48. Nor is it within the purview of those cases which deny to the surety the right to retain funds which accrue to it by reason of a favorable compounding of the debts of its principal as illustrated in Laber v. Gall, 71 App.D.C. 345, 110 F.2d 697; Martin v. Ellerbe's Adm'r, 70 Ala. 326; Coggeshall v. Ruggles, 62 Ill. 401. The principle applied in rendering the presently assailed judgment, is the right of the sureties to be made whole, and profit is not involved.

 There remains the appellant's final contention that the claim for interest is unsecured in that it arose after the levy of the tax lien. We agree with the district judge that a surety who makes good under his contract of suretyship upon default of the principal contractor, acquires an equitable lien against the unpaid balance in the hands of the person in whose favor the bond runs, and that such equitable lien upon payment by the surety relates back to the date of the contract and is superior to a claim of the United States for unpaid taxes for periods subsequent to the date of the contract of suretyship, although prior to the date of payment by the surety. In re Zaepfel and Russell, D.C., 49 F.Supp. 709, affirmed Farmers State Bank v. Jones, 6 Cir., 135 F.2d 215; Farmers' Bank v. Hayes, 6 Cir., 58 F.2d 34; Prairie State Nat. Bank of Chicago v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412. The cases relied upon by the appellant are not contra. People of State of New York v. Maclay, 288 U.S. 290, 53 S.Ct. 323, 77 L.Ed. 754, involved 31 U.S.C.A. § 191, which provides that when a person indebted to the United States is insolvent and the estate insufficient to pay all debts of the deceased, those due the United States shall be first satisfied. No disposition of an insolvent's estate is here involved, and the statute has no present application. United States v. City of Greenville, 4 Cir., 118 F.2d 963.

Michigan v. United States, 317 U.S. 338, 63 S.Ct. 302, 303, 87 L.Ed. 312, is further afield. It rejected the contention that a Michigan statute declaring state taxes to be a first lien upon real property on specified dates, could create a priority against an earlier lien for federal taxes under the Supremacy Clause of the United States Constitution, Art. 1, § 8, "Hence it is not debatable that a tax lien imposed by a law of Congress, as we have held the present lien is imposed, cannot, without the consent of Congress, be displaced by later liens imposed by authority of any state law or judicial decision." Conceiving the liens of the sureties to have been created by the contract and effective as of its date, the doctrine in the Michigan case has no present application.

The motion to dismiss the appeal is denied, the motion to correct the docket and caption of the record by substituting Seldon R. Glenn, Collector, for United States of America, is granted, and the judgment below is affirmed.

MARTIN, Circuit Judge (dissenting).

I would reverse the judgment and remand this cause to the district court, with direction that the sum of $7,076.15 be paid from the funds in the registry of the court to the United States Collector of Internal Revenue in partial payment of the tax lien of the United States for $13,029.28.

It may be conceded that, in ordinary circumstances, a surety who makes good under his contract of suretyship upon default of the principal contractor acquires an equitable lien against the unpaid balance in the hands of the obligee of the bond and that such equitable lien, upon payment by the surety, relates back to the date of the contract. But, to my thinking, it does not follow from this that such equitable lien is superior to the perfected lien of the United States for unpaid taxes of the defaulting contractor, for periods subsequent to the date of the contract of suretyship but prior to the date of payment by the surety, to the extent that interest must be allowed the surety on the principal sum paid by it when such allowance would completely exclude the Government tax lien, which attached to the funds involved before the surety

expended money in performance of its obligation under the bond.

Nor do I think the authorities cited, but not discussed, in the opinion of the court support the conclusion reached. In re Zaepfel and Russell, D.C., 49 F.Supp. 709, affirmed Farmers State Bank v. Jones, 6 Cir., 135 F.2d 215; Farmers' Bank v. Hayes, 6 Cir., 58 F.2d 34; Prairie State Nat. Bank of Chicago v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412. None of these cases dealt either with interest or with tax liens. The controversies in them were between surety companies and banks, and were decided upon principles of subrogation, by which priority was accorded to the claims of the sureties over the claims of banks advancing money to the contractors.

In this case, the obligee of the faithful performance bond who had in possession retained percentages was served by the Collector with a notice of levy and warrant for distraint on August 12, 1943, followed by service of final notice and demand on August 16, 1943. The Collector appropriately recorded his notice of tax lien on August 13, 1943. The obligee notified the sureties that, on August 20, 1943, the $13,-029.28 internal revenue taxes claimed out of the $59,647.72 retained percentages in its hands would be paid to the Collector, in compliance with his demand, unless the obligee was restrained from doing so. On August 19, 1943, payment to the Internal Revenue Collector was stayed, and ultimately enjoined, by the filing of this action by the sureties.

After the sureties paid off the material and labor claims, there were sufficient retained funds ($59,647.72) in the hands of the obligee to pay in full the amount expended by the sureties ($52,571.57) and leave a balance of $7,076.15 to be paid pro tanto on the tax lien of the United States, if this action had not been brought. To allow the surety companies to absorb this sum in interest, to the exclusion of the United States in the partial collection of its taxes, seems to me inequitable in the circumstances. Such allowance is certainly not supported by direct authority.

Moreover, my reasoning by analogy differs from that of the majority opinion. The question before us is new; but the facts here are not too far afield to enable us to receive guidance from the applicable rules in bankruptcy, receivership and reorganization proceedings. It should be remembered that while no insolvency proceedings were pending against the contractor, he was nonetheless insolvent at the time this action was brought. See Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 67 S.Ct. 237, for discussion of the balancing of equities with respect to the allowance of interest in bankruptcy, receivership and reorganization matters. See People of State of New York v. Maclay, 288 U.S. 290, 53 S.Ct. 323, 77 L. Ed. 754, for discussion of the priority of United States tax claims over claims of a state for franchise taxes given precedence by state law over other intervening claims. Upon the principles derivable from these authorities and from Michigan v. United States, 317 U.S. 338, 63 S.Ct. 302, 87 L.Ed. 312, and upon logical reasoning, I think the equitable lien of the sureties is equitably satisfied by reimbursement to them of the principal sum expended in fulfilment of their obligation, without added allowance of interest on such amount.

A surety is limited to recovery of his actual loss, and no profit may be made by him at the expense of other creditors of his principal. While interest is not generally the equivalent of profit, it may become so when balanced against the equities of other creditors of the principal. Especially is this true when, as in the instant case, the United States is a tax-lien creditor protesting against the allowance of six percent interest on a related-back lien accruing from the insolvency of a defaulting principal, whose faithful contractual performance the surety had guaranteed. There are relatively few six percent investments in the portfolios of insurance companies.